# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
      **Plaintiff,**

    **v.**                    **Case No. 09-CR-309**

**WILLIAM TEWS**
      **Defendant.**

---

## SENTENCING MEMORANDUM

In the fall of 2005, the FBI executed a search warrant at the home of defendant William Tews, seizing his computer. Defendant admitted downloading images of child pornography, and a subsequent examination of the computer revealed over 100 such images. Defendant agreed to cooperate with the government in identifying others who possessed or traded those materials and subsequently debriefed on two occasions, going through hundreds of screen names with agents.

The investigation apparently failed to lead to other prosecutions, and defendant heard nothing further from the government until December 2009, when he was charged by information with possession of child pornography. Defendant pleaded guilty to the charge, and I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, I first calculated the advisory sentencing guideline range. I then determined the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). <u>See, e.g.</u>, <u>Gall v. United States</u>, 552 U.S. 38, 49-50 (2007); <u>United States v. Bush</u>, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for the sentence imposed.

# I. GUIDELINE CALCULATION

The PSR recommended a base offense level of 18 under U.S.S.G. § 2G2.2(a)(1), with enhancements of 2 levels because the offense involved depictions of a prepubescent minor or a minor who had not attained the age of twelve years, § 2G2.2(b)(2), 4 levels because the offense involved material portraying sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4), 2 levels for use of a computer, § 2G2.2(b)(6), and 3 levels based on the number of images defendant possessed, § 2G2.2(b)(7)(B), for an adjusted level of 29. The PSR then recommended a 3 level reduction for acceptance of responsibility under § 3E1.1 based on defendant's timely guilty plea, for a final level of 26. Because he had no prior criminal record, the PSR set a criminal history category of I, producing an imprisonment range of 63-78 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

# II. SECTION 3553(a)

## A.    Sentencing Factors

In imposing the ultimate sentence, the district court must consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

2

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant.  In making this determination, the district court may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 2465 (2007), or place "any thumb on the scale" favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).  The court is also free, in evaluating the guidelines' recommendation, to consider whether when it adopted the particular guideline the Sentencing Commission fulfilled its "characteristic institutional role." Kimbrough v. United States, 552 U.S. 85, 109 (2007).  Ultimately, the district court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties.  See Gall, 552 U.S. at 49-50.

**A.     Analysis**

    **1.     The Offense**

In August of 2005, an undercover FBI agent communicated with defendant in a chat room, and they agreed to trade materials.  Defendant subsequently sent the agent several

3

images, some child pornography, some child erotica.  The agent asked defendant whether he had ever been with a child or just fantasized, and defendant responded, "Just fantasized . . . though I'd sure love to really do it."  The government uncovered no evidence that defendant ever actually molested a child.

The following month, law enforcement executed a search warrant at defendant's residence, and defendant admitted downloading nude pictures of children for a couple of years. He said he came upon a website advertising pictures of nude children while searching for adult pornography and admitted that he then started searching for this material; he also admitted trading images off and on over the past year.  He said that his communications with the agent were just talk.

In a written statement, defendant admitted acquiring the images, explaining that his acquisition was intermittent because he would periodically become consumed by guilt and delete his collection, but would then begin collecting again.  He said that it served as an escape from depression caused by the death of his brother in 2003.  He denied any inappropriate sexual contact with children.

Agents conducted a forensic examination of defendant's computer, locating 124 images of child pornography, some of which the PSR described.  One depicted a nude girl whose legs appeared to be bound by black belts.  Most depicted girls exposing their genitals.  Further examination revealed additional images, for a total of more than 150.

In both his statement to the PSR writer and his allocution at the time of sentencing, defendant indicated that while he once downplayed the harm he was causing he now realized the seriousness of his conduct.  He further indicated that he had confronted the psychological issues that led to his shameful behavior.

4

### 2. The Defendant

At age forty-nine, defendant had no prior record and an otherwise positive background. He graduated high school and worked as a custodian for the Milwaukee Public Schools ("MPS") for eighteen years, resigning after this offense was detected, then in gas meter maintenance for a utility company. He lost that job after the company moved, and he was at the time of sentencing unemployed.

It appeared that defendant had a good upbringing, and his family remained supportive. It did appear that depression ran in the family: one of defendant's brothers committed suicide in 2003, and his sister indicated that defendant appeared depressed after the death of their parents in 2000 and 2002, and their brother's suicide.

Defendant received psychological treatment related to depression and anxiety in 1991, stopped when his condition improved, then returned in 2003 following the death of his brother. He resumed therapy again in early 2006 after the FBI search of his home but was unable to continue with those sessions due to an inability to pay. At the time of sentencing he was taking medication for anxiety prescribed by his general physician. Defendant's treatment needs included a mental health assessment, perhaps sex offender treatment based on that assessment, and continued treatment for anxiety. I concluded that those needs could be met in the community. I saw no current substance abuse issues.

### 3. The Guidelines and Purposes of Sentencing

The guidelines recommended 63-78 months in prison, but based on (a) the flaws in U.S.S.G. § 2G2.2 and (b) the specific circumstances of this case, I found that range greater than necessary here.

### a.    Guideline Flaws

As judges across the country have acknowledged, U.S.S.G. § 2G2.2 is seriously flawed and accordingly entitled to little respect.  See, e.g., United States v. Howard, No. 8:08CR387, 2010 WL 749782, at *4-7 (D. Neb. Mar. 1, 2010); United States v. Manke, No. 09-CR-172, 2010 WL 307937, at *4 (E.D. Wis. Jan. 19, 2010) (citing United States v. Raby, No. 2:05-cr-00003, 2009 WL 5173964, at *6 (S.D. W. Va. Dec. 30, 2009); United States v. Burns, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009); United States v. McElheney, 630 F. Supp. 2d 886, 892 (E.D. Tenn. 2009); United States v. Phinney, 599 F. Supp. 2d 1037, 1040 (E.D. Wis. 2009); United States v. Grober, 595 F. Supp. 2d 382 (D.N.J. 2008); United States v. Stern, 590 F. Supp. 2d 945 (N.D. Ohio 2008); United States v. Doktor, No. 6:08-cr-46, 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008); United States v. Johnson, 588 F. Supp. 2d 997 (S.D. Iowa 2008); United States v. Noxon, No. 07-40152, 2008 WL 4758583 (D. Kan. Oct. 28, 2008); United States v. Ontiveros, No. 07-CR-333, 2008 WL 2937539 (E.D. Wis. July 24, 2008) (Griesbach, J.); United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa 2008); United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008)).[1]

In Phinney, 599 F. Supp. 2d at 1041-43, I set forth in detail the history of this guideline as it pertains to possession offenders, and I incorporate by reference that discussion here.  In the present case, I specifically noted that defendant received several of the flawed guideline

---

[1]While the Seventh Circuit has concluded that these flaws do not render U.S.S.G. § 2G2.2 invalid, it has acknowledged that "district courts are certainly free to disagree with the child pornography Guidelines as applied to a particular case as long as the sentence imposed is reasonable."  United States v. Pape, No. 09-2336, 2010 WL 1488521, at *1 (7th Cir. Apr. 15, 2010).

6

enhancements discussed in both <u>Phinney</u> and <u>Hanson</u>, 561 F. Supp. 2d at 1010-11, including for use of a computer, possession of material involving children under twelve years of age, and number of images, factors present in almost every case.

First, as to use of a computer, aside from being present in nearly every case, as the Sentencing Commission itself has explained, the enhancement does not make a great deal of sense because online pornography generally comes from the same pool of images found in specialty magazines or adult bookstores. Further, to the extent that use of a computer may aggravate an offense, it does not do so in every case. For example, someone who receives or trades images with others on-line is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers. If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child, the purpose for the enhancement is not really served. <u>See</u> <u>Hanson</u>, 561 F. Supp. 2d at 1009-10. Defendant did not engage in the more aggravated conduct here.

Second, defendant received a 3-level enhancement for 150-300 images, despite the fact that, as a result of internet swapping, defendants readily obtain that number of images (and more) with minimal effort. Further, to the extent that number of images may serve as a proxy for harm, the guidelines overstate that harm. The worldwide market for child pornography is so vast that the relative market impact of several hundred additional images is minuscule, yet results in a significant increase in the guidelines. <u>See</u> <u>Raby</u>, 2009 WL 5173964, at *7.

Finally, defendant received a 4-level enhancement for depictions of sadistic conduct. The PSR described just one image meeting this definition, and it appeared that the material defendant possessed not was generally of this variety. The record also contained no evidence that defendant specifically sought out such material. To the extent that harsh punishment is

7

necessary to reduce the demand for material that results in the greatest harm to children, a defendant who does not seek out the worst should not receive the same sentence as someone who does. See Hanson, 561 F. Supp. 2d at 1009.

Under the Commission's initial approach, which was based on study, possession offenders received a base offense level of 10, with a possible enhancement of 2 levels based on the age of the minors depicted. With a 2 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, in criminal history category of I that approach produces a range of 6-12 months. See Phinney, 599 F. Supp. 2d at 1043. The range defendant faced was much higher because of changes instigated by Congress, which did not exemplify the Commission's exercise of its characteristic institutional role. Under the specific circumstances of this case, I found a sentence consistent with the original range sufficient but not greater than necessary.

### b.    Specific Circumstances of the Case

The specific facts of this case suggested no need for prison to deter defendant from re-offending or to protect the public. Defendant had no prior convictions, and the record contained no evidence that defendant had committed or likely would commit a contact offense with a child. Police questioned the children in defendant's family, and no evidence of abuse turned up. Nor had any such evidence emerged related to defendant's employment at MPS. Further, this case presented the unusual circumstance of a long delay between detection and charging. Law enforcement discovered defendant's crime in 2005, and he remained in the community, unsupervised, for over four years before the government charged the case, and no problems arose during this time. This further suggested that defendant did not pose a danger to the community. As the government acknowledged, the fact that defendant lived with this case hanging over his head for going on five years, due to no fault of his own, also served

8

as a type of punishment. Defendant's allocation demonstrated that he understood the harm he had caused, and I found him unlikely to return to downloading this material. I found that a lengthy period of supervision with strict conditions sufficed to protect the public and deter defendant from re-offending. Defendant's treatment needs could also be met in the community. Finally, I noted that defendant made an effort to cooperate, debriefing with law enforcement twice and providing information on the screen names of those with whom he communicated. The court may consider such efforts in mitigation of the sentence, even without a formal U.S.S.G. § 5K1.1 motion from the government. See United States v. Knox, 573 F.3d 441, 453 (7th Cir. 2009).

Nevertheless, some period of confinement was needed to reflect the seriousness of the offense and deter others. Defendant's suggestion of probation was insufficient to satisfy these purposes. This was a serious crime; children are abused to create the images feeding the market in this material. Although defendant did not personally abuse a child, his conduct, and the conduct of those like him, contributed to that abuse. Defendant demonstrated an understanding of that, both in his statement to the PSR writer and in his allocation, which I found sincere and insightful.

Under all of the circumstances, I found a sentence 8 months,[2] followed by 10 years of supervised release, sufficient but not greater than necessary. Because the sentence was supported by the particular facts of the case, defendant's attempted cooperation, and the Commission's original approach to child pornography possession cases, it created no unwarranted disparity.

_____

[2]Given the type and number of images, and defendant's admission of swapping, I found a sentence above the low end of the original range necessary.

9

### III.  CONCLUSION

For these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for 8 months, followed by 10 years of supervised release.  The guidelines recommended lifetime supervision, <u>see</u> U.S.S.G. § 5D1.2(b),  but given his age and good conduct over the past five years, I found this term sufficient to ensure monitoring.  As conditions of supervision, I restricted defendant's computer usage; required him to participate in a mental health treatment program; forbid him from possessing sexually explicit material; required him to register with state and local authorities, as required by law; required him to provide access to all financial information requested by the supervising probation officer; and required him to perform community service work in lieu of a fine.  Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of April, 2010.


/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

10